THERESA HENNS,

                Plaintiff,

-vs-                                             Case No.  5:11-cv-55-J-37TBS

MONY LIFE INSURANCE COMPANY OF
AMERICA,

                Defendant.

_____

# ORDER

This case comes before the Court on the following:

1.     Motion for Final Summary Judgment by Plaintiff Theresa Henns (Doc. No. 26, filed June 4, 2011);

2.     Response in Opposition to Plaintiff's Motion for Summary Judgment by Defendant Mony Life Insurance Company of America (Doc. No. 29, filed July 5, 2011);

3.     The Affidavit of Marcus Burdick in Opposition to Plaintiff Theresa Henns's Motion for Summary Judgment (Doc. No. 30, filed July 5, 2001); and

4.     Reply in Support of Motion for Summary Judgment by Plaintiff Theresa Henns (Doc. No. 36, filed July 20, 2011.)

## I.    Background

This action concerns the claim of Theresa Henns ("Henns") that she is entitled to benefits under a contract of life insurance (Policy Number 2B80027358 (the "Policy")), issued by Mony Life Insurance Company of America ("Mony") to Henns's deceased spouse, Robert Harvey ("Harvey"). (Doc. No. 2, filed Feb. 9, 2011.)   In her single-count Complaint, Henns alleged that she is the

primary beneficiary under the Policy, which has a face amount of $650,000.00. (*Id.* ¶¶ 1, 3-4.) Henns alleged that, upon Harvey's death in a car accident on March 3, 2010, Mony was obligated to pay her the full amount of the Policy, but Mony denied her claim on May 4, 2010, and thereafter has refused to pay her benefits under the Policy. (*Id.* ¶¶ 5-8.) Henns further alleged that Mony's refusal to pay her benefits under the Policy is a breach of contract that has caused her damage. (*Id.* ¶¶ 9.) Finally, Henns alleged that she has "performed all conditions precedent" to entitle her "to recover under the Policy." (*Id.* ¶ 7.) Henns demands that Mony pay her the full Policy benefits, prejudgment interest, and her costs and attorney fees. (*Id.* at 2.)

On March 14, 2011, Mony filed its Answer, Affirmative Defenses, and Counterclaim for rescission. (Doc. No. 16.) Mony admitted the authenticity of a Statement of Insurance Coverage that Henns filed with her Complaint, but denied the bulk of Henns's remaining allegations. (*Id.* at 1-2.) Among its affirmative defenses, Mony alleged that Henn's claim fails because: (1) "[t]here is a failure of consideration" (First Affirmative Defense); and (2) the Policy is rescinded, lapsed for non-payment, and is "null and void" pursuant to Section 627.409 Florida Statutes (Second and Fourth Affirmative Defenses). (*Id.* at 3.) In support of its Counterclaim for rescission, Mony alleged that: (1) the Policy lapsed on July 24, 2008, because a premium was not paid; (2) in seeking reinstatement of the Policy, Harvey "fraudulently" made "false statements, misrepresentations, omissions, [and] concealed facts" in three applications for reinstatement (the "Reinstatement Applications"); and (3) Mony reinstated the Policy on December 1, 2008, in reliance on the "truthfulness and completeness of the answers provided" by Harvey in the Reinstatement Applications (*Id.* at 4-6 ¶¶ 9, 17-20, 23-26.) Finally, Mony alleged that it tendered to Henns "all premiums paid for the reinstatement of the Policy." (*Id.* at 7 ¶ 27.) Because the Policy was properly

rescinded (according to Mony), it had no obligation to pay Henns benefits under the Policy. Mony requests that the Court enter judgment in its favor that the Policy is rescinded pursuant to Section 627.409 Florida Statutes, declare the Policy "null, void and of no effect as of the date of its lapse," and require Henns to pay Mony its costs, expenses and attorney fees. (*Id.* at 7.)

In her Answer to Mony's Counterclaim, Henns admitted that a premium payment "was not electronically debited from" her account in July 2008 due to an error, but she denied that the Policy "lapsed" or was properly cancelled. (Doc. No. 18 ¶ 9, filed March 29, 2011.) Henns admitted that she contacted Mony after being advised by a Mony agent that the Policy "was cancelled," and Mony requested that Harvey submit a reinstatement application. (*Id.* ¶¶ 10-11.) Henns denied that Harvey fraudulently made false statements, omissions, or concealed facts concerning his health in any application to Mony. (*Id.* ¶¶ 12-17, 23-26.) Finally, Henns denied that Mony tendered premiums paid to her; rather, Henns alleged that Mony unsuccessfully sought her release of claims in exchange for a check in the amount of $837.72. (*Id.* ¶ 27.) Among her affirmative defenses, Henns alleged estoppel, waiver, unclean hands (Affirmative Defenses Two, Three, Four, and Nine), and failure to comply with conditions precedent (Affirmative Defense Eight). (*Id.* at 4-6.)

On June 4, 2011, Henns filed a Motion for Summary Judgment, arguing that judgment should be entered in her favor on her Complaint for breach of contract, and against Mony on its affirmative defenses and Counterclaim for rescission. (Doc. No. 26.) According to Henns, this matter is appropriate for summary judgment for the following three reasons.

(1)     First, her breach of contract claim is established as a matter of law because Mony has paid her no benefits under the Policy even though the conditions triggering Mony's duty to pay Henns occurred when Harvey died and Henns submitted proof of his death. (*Id.* at 7-8.)

(2)     Second, it is undisputed that the Policy is supported by consideration in that

[Harvey and Henns] paid money to Mony for the Policy; thus, Mony cannot prevail on its first affirmative defense as a matter of law. (*Id.* at 8.)

(3)     Finally, as a matter of law, Mony cannot prevail on its Counterclaim and remaining affirmative defenses because Mony's failure to comply with the Policy requirement of attaching Reinstatement Applications to the Policy bars Mony from relying on purported fraudulent statements in such applications. (*Id.* at 8-11.)

(Doc. No. 26 at 8-14.)

On July 5, 2011, Mony filed its Response in Opposition to Henns's Motion for Summary Judgment ("Response"). (Doc. No. 29.) In its Response, Mony did not challenge Henns's first and second arguments. Mony disputes only the third argument. Specifically, Mony argues that its defenses and Counterclaim are properly based on statements made by Harvey in the Reinstatement Applications because neither the terms of the Policy nor Florida law required Mony to attach the Reinstatement Applications to the Policy. (*Id.* at 3.) Henns filed her Reply in support of her Motion on July 20, 2011. (Doc. No. 36.) Discovery is not yet complete; nonetheless, Mony does not argue that Henns's dispositive motion is premature, and neither party suggests that the Court should delay its resolution of Henns's Motion for Summary Judgment.[1] *See* Fed. R. Civ. P. 56(d).

## II.     The Legal Standards

### A.     Jurisdiction and Choice of Law

This Court is authorized under 28 U.S.C. § 1332 to exercise jurisdiction because the parties are diverse and the amount in controversy exceeds $75,000.00. Further, because the Policy was issued to a Florida resident, and the events giving rise to this action occurred in Florida, the law of

---

[1] Discovery is contentious and ongoing with both parties seeking intervention from the Court for the other party's purported discovery abuses. (Doc. Nos. 32, 37, 38, 41, 42, 44, 45, 48-52, 60, 64, 66-70, 72-81.) These matters have been referred to Magistrate Judge Thomas B. Smith. (Doc. No. 40, 59, 62, 65, 71.)

Florida controls the resolution of this action.

**B.     Standard of Review**

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259 (11th Cir. 2004). An issue of fact is "material" under the applicable substantive law if it might affect the outcome of the case. *Hickson Corp.*, 357 F.3d at 1259. An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Id.* at 1260. The court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.*

The party moving for summary judgment has the burden of proving that: (1) there is no genuine issue as to any material fact, and (2) it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The court may not weigh conflicting evidence or weigh the credibility of the parties. *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993). If a reasonable fact finder could draw more than one inference from the facts and that inference creates an issue of material fact, the court must not grant summary judgment. *Id.* On the other hand, summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear

the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. In addition, when a claimant fails to produce "anything more than a repetition of his conclusory allegations," summary judgment for the movant is "not only proper but required." *Morris v. Ross*, 663 F.2d 1032, 1034 (11th Cir. 1981).

## C.    Florida Law

### 1.    Florida's Insurance Code

Insurance policies are contracts subject to common law contract principles in Florida. *Bankers & Shippers Ins. Co. v. Phoenix Assurance Co.*, 210 So. 2d 715, 719 (Fla. 1968). Insurance also is regulated and, by statute, Florida requires that insurers include certain provisions in insurance policies offered to Florida residents. § 627.452(1), Fla. Stat. (2010) ("No policy of life insurance . . . shall be delivered or issued for delivery in this state unless it contains in substance each of the provisions as required by §§627.453-627.462 inclusive and §§627.475 and 627.476 . . . ."); *see also*, § 627.412(1), Fla. Stat. (2010); *Green v. Life & Health of Am.*, 704 So. 2d 1386, 1391-92 (Fla. 1998).

Among the provisions required in all life insurance contracts is that "settlement shall be made upon receipt of due proof of death and surrender of the policy" when "a policy becomes a claim by death of the insured." § 627.461, Fla. Stat. (2010). Payment of specified interest on amounts owed under a life insurance contract are mandated as well. § 627.4615, Fla. Stat. (2010). And, life insurance policies must include a provision giving insureds "a grace period of not less than 30 days within which payment of any premium after first due may be made." § 627.453, Fla. Stat. (2010).

Florida also requires insurers to include terms in life insurance policies that the policy shall be incontestable under certain circumstances. Specifically, Florida Statutes, Section 627.455, provides

as follows:

> Every insurance contract shall provide that the policy shall be incontestable after it has been in force during the life-time of the insured for a period of 2 years from its date of issue expect for nonpayment of premiums and except, at the option of the insurer, as to provisions relative to benefits in event of disability and as to provisions which grant additional insurance specifically against death by accident or accidental means.

§ 627.455, Fla. Stat. (2010).

Applications for life insurance are regulated as well, with Florida requiring that every insurance contract include the following provision:

> [T]hat the policy, or the policy and the application therefor if a copy of such application is endorsed upon or attached to the policy when issued, shall constitute the entire contract between the parties, and that all statements contained in the application shall, in the absence of fraud, be deemed representations and not warranties.

§ 627.454, Fla. Stat. (2010). If an insurer fails to attach an insured's application to the policy when issued, the insurer is thereafter prohibited from admitting the application in evidence in an action contesting the policy. § 627.408(1), Fla. Stat. (2010). The pertinent provisions read as follows:

> (1)     An application for the issuance of any life or health insurance policy or annuity contract *is not admissible* in evidence in an action relative to the policy or contract unless a true copy of the application was attached to or otherwise made a part of the policy or contract when issued.

§ 627.408(1), Fla. Stat. (2010) (emphasis added).[2]

---

[2]  The statute further provides that:

> After reinstatement or renewal of a policy of insurance delivered or issued for delivery in this state, the insured may, in writing, request from the insurer a copy of the original application, or the application for renewal or reinstatement, if any. The insured or the beneficiary or assignee of a life or health insurance policy may request the

Almost seventy years ago, the Florida Supreme Court explained the purpose of provisions precluding insurers from relying, in a policy contest, upon statements in an application that the insurer failed to attach to the policy. Specifically, such provisions serve to:

> guard the insured against misunderstanding as to his contract and, in case of controversy with the company to protect him against surprise, inconvenience, and danger of injustice liable to arise where the policy does not contain the entire agreement and refers for parts of its applications and other papers in possession of the insurance company.

*Prudential Ins. Co. of Am. v. Prescott*, 176 So. 875, 880 (Fla. 1937). The *Prescott* Court also noted that insurers often include such attachment requirements in their policies as an "inducement to the insured." *Id.* Florida courts do not hesitate to enforce such provisions even in the face of apparent fraud or misrepresentations by the insured. *Id.* (holding that the insured could not base its misrepresentation allegations on statements made by the insured in an application that the insurer failed to attach to the policy where the policy required attachment of the application).

By statute, Florida provides the following default standards and provisions for an insurer's contest of a policy based upon an insured's misrepresentations or omissions:

> (1) Any statement or description made by or on behalf of an insured or annuitant in an application for an insurance policy or annuity contract, or in negotiations for a policy or contract, is a representation and is not a warranty. A misrepresentation, omission, concealment of fact, or incorrect statement may prevent recovery under the contract or policy only if any of the

---

> application. Within 30 days after receiving the request, the insurer must deliver or mail a legible copy of the application to the person requesting it. If the request is made by a beneficiary, the 30-day period does not begin to run until after receipt of evidence satisfactory to the insurer of the beneficiary's vested interest in the policy or contract.

§ 627.408(2), Fla. Stat. (2010).

following apply:

> (a)     The misrepresentation, omission, concealment, or statement is fraudulent or is material either to the acceptance of the risk or to the hazard assumed by the insurer.

> (b)     If the true facts had been known to the insurer pursuant to a policy requirement or other requirement, the insurer in good faith would not have issued the policy or contract, would not have issued it at the same premium rate, would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss.

> (2)     A breach or violation by the insured of any warranty, condition, or provision of any wet marine or transportation insurance policy, contract of insurance, endorsement, or application therefor does not void the policy or contract, or constitute a defense to a loss thereon, unless such breach or violation increased the hazard by any means within the control of the insured.

§ 627.409, Fla. Stat. (2010) (emphasis added). As to reinstated life insurance policies, Section 627.472, provides further:

> A reinstated policy of life insurance . . . contract may be contested on account of fraud or misrepresentation of facts material to the reinstatement only for the same period following reinstatement and *with the same conditions and exceptions as the policy provides with respect to contestability after original issuance*.

§ 627.472, Fla. Stat. (2010) (emphasis added). Section 627.472 is effective even if the Policy does not include specific provisions concerning contestability of a reinstated policy of life insurance. *Occidental Life Ins. Co. of Cal. v. Sobieski*, 359 F.2d 382, 384 (5th Cir. 1966).[3]

Parties may "'contract-out or 'contract around'" any of Florida's statutory provisions concerning insurance "so long as there is nothing void as to public policy or statutory law about such

---

[3] The Eleventh Circuit Court of Appeals adopted as binding precedent all prior decisions of the former Fifth Circuit Court of Appeals issued prior to October 1, 1981. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

a contract." *Green*, 704 So. 2d at 1390 (internal citations omitted); *see also* § 627.414(3), Fla. Stat. (2010) ("A policy may contain additional provisions not inconsistent with this code and which are . . . [d]esired by the insurer and neither prohibited by law nor in conflict with any provisions required to be included therein."). Specifically, insurers may include terms in their policies that are more favorable to an insured than are the provisions mandated by the Florida legislature. § 627.452(1) Fla. Stat. (2010) (providing that life insurance policies may include "provisions which in the opinion of the office are more favorable to the policyholder"). In short, Florida courts do not hesitate to enforce policy provisions that are more favorable to an insured than those mandated by statute. *Green,* 704 So. 2d at 1390-91 (construing policy language in favor of insured and rejecting insurer's effort to "claim refuge" in Florida's statute that was more favorable to the insurer); *Griffin v. Am. General Life and Acc. Ins. Co.,* 752 So. 2d 621, 623-24 (Fla. 2d DCA 1999) (reversing summary judgment entered in favor of insured on claim for rescission despite absence of doubt that insured's "health was not correctly represented on the application for life insurance").

### 2. Interpretation of Insurance Contracts

The "guiding principle" applied by courts when construing an insurance policy is to give effect to the plain language of the policy. *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 165 (Fla. 2003). If the court is unable to discern a single plain meaning of a policy provision because the policy language is susceptible to more than one reasonable interpretation, then the court must adopt the interpretation that favors the insured and provides coverage. *Swire Pac. Holdings*, 845 So. 2d at 165 (citing *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000)); *State Farm Mut. Auto. Ins. Co. v. Pridgen*, 498 So. 2d 1245, 1248 (Fla. 1986); *e.g., LaTorre v. Conn. Mut. Life Ins. Co.*, 38 F.3d 538, 541 (11th Cir. 1994) (construing phrase "in force" in incontestability

provision in favor of insured). But, courts may not adopt "a strained and unnatural construction" of policy language "in order to create an uncertainty or ambiguity." *Health Options, Inc. v. Kabeller*, 932 So. 2d 416, 420 (Fla. 2d DCA 2006). Finally, courts must interpret policy terms in the context of the policy as a whole and may not consider "an isolated sentence in a policy as determinative on the question of coverage." *Ellenwood v. S. United Life Ins. Co.*, 373 So. 2d 392, 395 (Fla. 1st DCA 1979); *see also*, § 627.419(1), Fla. Stat. (2010) ("Every insurance contract shall be construed according to the entirety of the terms and conditions as set forth in the policy and as amplified, extended, or modified by any application therefor or any rider or endorsement thereto.").

### 3. Elements and Burdens of Proof

Henns has the burden of proving each element of her breach of contract claim. *Health Options, Inc. v. Palmetto Pathology Servs., P.A.* 983 So. 2d 608, 615 (Fla. 3d DCA 2008). Because she claims rights under the Policy as a beneficiary – not a contracting party – she must prove the following elements: (1) existence of a contract; (2) "the clear or manifest intent" of Harvey and Mony that the "contract primarily and directly benefit" Henns; (3) breach of the contract by Mony; and (4) damages to Henns resulting from Mony's breach. *Health Options,* 983 So. 2d at 615.

Mony has the burden of proving each element of its Counterclaim and affirmative defenses. To prevail on its claim that the policy is void and properly rescinded based on Florida Statutes, Section 627.409, Mony must prove: (1) Harvey made a misrepresentation in the Reinstatement Application; (2) Harvey's misrepresentation was material; and (3) Mony detrimentally relied on the misrepresentation. *See Griffin*, 752 So. 2d at 623-24; *Fla. Power & Light Co. v. Foremost Ins. Co.*, 433 So. 2d 536, 536-37 (Fla. 4th DCA 1983) (reversing judgment for insurer).

### III.    Analysis

**A.    Summary of Facts Viewed in the Light Most Favorable to Mony**

After issuing the Policy on July 24, 2000, Mony delivered the Policy, including the original application, to the original Policy owner – the Robert J. Henns Trust.[4] (Doc. No. 30 ¶¶5-7; Doc. No. 26.)  On July 24, 2002, the Policy became incontestable as to statements made in Harvey's original application.[5]  (Doc. No. 30 at 20-21.)  In October of 2005, Harvey became the sole owner of the Policy, and Henns was made the beneficiary of the Policy.  (*Id.* at ¶¶ 9-10.)  Mony accepted premium payments for the Policy from 2000 through 2007, and the Policy was "in force" until August of 2008 when Mony did not receive a premium payment prior to lapse of the grace period.[6] (Doc. No. 30 ¶¶ 6-7.)

In September of 2008, Henns was advised by Mony that the Policy was "cancelled."  (Doc.

---

[4]  Neither party has provided the Court with a copy of Harvey's initial application for life insurance.  Nor has any party provided the Court with a copy of an exemplar or specimen of such original application – even though, by the Policy terms, the application would have to be attached to the Policy.

[5]  The purpose of incontestability provisions is to "create a reasonable time period during which insurance companies can investigate applicants and void policies issued in error, while protecting consumers from untimely efforts to void policies." *Prudential Ins. Co. of Am. v. Prescott*, 130 Fla. 11, 17-18 (Fla. 1937); *e.g.*, *Allstate Life Ins. Co. v. Miller*, 424 F.3d 1113, 1115 (11th Cir. 2005) ("[O]nce the incontestability clause become effective, insurers are barred from attempting to rescind or cancel the insurance policy based on allegations that the insured engaged in fraud and misrepresentation."); *Bankers Sec. Life Ins. Soc. v. Kane*, 885 F.2d 820, 821-22 (11th Cir. 1989) (noting that Florida does not recognize a fraud exception to the rule of incontestability and affirming dismissal of insurer's fraud and rescission claims).  *See generally*, Lee R. Russ and Thomas F. Segalla, 17 *Couch on Insurance* §§ 240:1, 240:42 (3d ed. 2000).

[6]  According to Mony, the Policy "lapsed for failure to pay premiums" on July 24, 2008; however, under the Policy terms and Florida law, the Policy remained in effect during the "grace period" – until August 25, 2008.  (*Compare* Doc. No. 30 ¶11; *with id.* at 19 (Section 5 "Grace Period")).  *See also* § 627.453, Fla. Stat. (2010); *Carolina Life Ins. Co. v. Dupont*, 141 So. 2d 624, 626 (Fla. 1st DCA 1962).

No. 26 at 3.)  Thereafter, Harvey and Henns took action to reinstate the Policy, including submitting

the Reinstatement Applications on October 8, 2008, October 15, 2008, and November 17, 2008.

(Doc. No. 30 ¶¶ 12-13, 30-42.)  The Reinstatement Application dated October 8, 2008 ("Oct. 8

Application") was comprised of five pages and was titled "Reinstatement Application for Life

Insurance."  (*Id.* at 31-35.)  The bottom portion of the first page of the Oct. 8 Application sets forth

"AGREEMENT" terms as follows:

> **AGREEMENT.  Each signer of this application agrees that:**
>
> (1)     The statements and answer in all parts of this application are true and complete to the best of my knowledge and belief. The Insurer may rely on them in acting on this application.
>
> (2)     The Insurer shall incur no liability under this request
>
> > (a)     until it has been approved by the Insurer and the full consideration required in connection with it has been paid; and
> >
> > (b)     if evidence of insurability is required, unless the statements and answers made part of this request and offered as evidence of insurability are, without material change, true and complete to the best of my knowledge and belief as of the time of payment of consideration;
>
> (3)     No Financial Professional or medical examiner has authority to modify this Agreement or waive any of the Insurer's rights or requirements.  The Insurer shall not be bound by any information unless it is stated in application Part 1 or Part 2, or in any other form submitted with this request.

(Doc. No. 30 at 31).  The second page of the Oct. 8 Application provides additional terms,  a

criminal prosecution warning, "Signature Requirements," and Harvey's signature and date.  Directly

above Harvey's signature are the following terms:

> The above answers and statement are true and complete to the best of

> my knowledge and belief, and are offered as part of this application. I understand that reinstatement will not take effect until the application has been approved and unless the full payment required for reinstatement has been made with this application.
>
> I (we) the undersigned, by my (our) signature(s) below understand that I (we) am (are) agreeing to all the terms and conditions of this application, including but not limited to the Acknowledgment and Authorization.

(Doc. No. 30 at 32.)

Page four of the Oct. 8 Application provides Mony's "PRIVACY POLICY," including terms concerning who Mony may share Harvey's personal information with and how Harvey may review information about him that Mony has in its files. (Doc. No. 30 at 34.) Page five of the Oct. 8 Application sets forth terms by which Harvey authorized Mony to obtain medical and other information about Harvey. (*Id.* at 35.) Among other terms, are the following:

> **PURPOSE OF AUTHORIZATIONS.** I (we) understand that the information obtained will be used by [Mony] to determine my (our) eligibility for life insurance coverage, and to obtain reinsurance. *If a policy is issued to me* (us), this information may also be used in the future to administer my (our) policy and process claims made under the policy. . . .
>
>           *          *          *
>
> **DURATION.** Unless otherwise revoked, I (we) agree that this authorization will expire on the earlier date that [Mony] declines my application for coverage or, *if a policy is issued*, 24 months from the date of my application. I (we) understand that I (we) may revoke my (our) authorization at any time. No termination or revocation shall affect (1) any action that [Mony] has taken in reliance on this authorization or (2) any right granted [Mony] by law to contest a claim under the policy or the policy items.

(*Id.* at 35 (emphasis added).) The Reinstatement Applications dated October 15, 2008 (the "Oct. 15 Applications") provide many of the same terms as the Oct. 8 Application (Doc. No. 30 at 37-42.)

Among the few differences between the two applications is that the Oct. 15 Applications omit a series of financial questions that are set forth in the Oct. 8 Application, and the questions concerning medical issues differ, and the criminal prosecution warning differs in that the Oct. 15 Applications specifically references Florida law.  (Doc. No. 30 at 39.)

After receipt of the executed Reinstatement Applications, Mony advised Harvey that the Policy was reinstated effective December 1, 2008; and, on December 12, 2008, Mony accepted from Harvey "payment of all overdue premiums plus compound interest at 6% a year."[7]  (Doc. No. 30 ¶ 14.)  Upon reinstatement, Mony did not attach the Reinstatement Applications to the Policy, nor did it ever provide a copy of the Policy with attached Reinstatement Applications to Henns or Harvey.  (Doc. No. 30 ¶ 15.)

On March 3, 2010, Harvey was killed as a result of a car accident.  (Doc. No. 26.)  On or about March 9, 2010, Henns timely submitted to Mony a claim for the proceeds of the Policy.  (Doc. No. 30 ¶ 16.)  Upon receipt of Henns's claim and proof of Harvey's death, Mony did not pay Henns any benefits under the Policy.  (*Id.*; *see* § 627.461, Fla. Stat. (2010)).  Instead, Mony "investigated Harvey's relevant medical history" and "determined that the Reinstatement Applications contained material misrepresentations and omissions."  (Doc. No. 30 ¶¶ 17-18.)  Mony explained its claim processing as follows:

> Because Mr. Harvey's death occurred within 2 years after the reinstatement of the Policy, *pursuant to the contestability provision of the Policy*, Mony examined, among other things, the statements and answers made on the Reinstatement Applications and

---

[7]  In correspondence dated December 1, 2008, Mony advised Harvey that his "application for reinstatement has been approved.  To complete this process, we need to receive a check for $506.19, which will reinstate your policy paid to July 24, 2009 . . . and late and/or misc charges of $13.69.  . . . ."  (Doc. No. 30 at 47).  Mony received the necessary funds on December 12, 2008.

investigated Mr. Harvey's relevant medical history.

> Mony determined that the Reinstatement Applications contained material misrepresentations and omissions. Had Mony been aware of the true answers to the question on the Reinstatement Applications, the Policy would not have been reinstated. As a consequence, Mony rescinded the Policy on May 4, 2010.

(Doc. No. 29 at 5 (emphasis added)). Mony does not identify the "contestability provision of the Policy" that purportedly permitted its investigation and denial of Henns's claim. (*Id.*)

Although not cited by Mony, the Court notes that Section 11, "General Provisions," answers the question "When will this Policy be incontestable?" as follows:

> This Policy will be incontestable as to statements made in the application for it, after it has been in force during the lifetime of the Insured for 2 years from its Date of Issue . . . .
>
> Any supplemental coverage issued as a result of a supplemental application will be incontestable as to statements made in that application during the lifetime of the Insured for 2 years from the date coverage took effect.

(Doc. No. 30 at 8.) Further, in the section of the Policy dealing with "Policy Changes," including conversion of the policy and additional benefits, the Policy provides as follows: "if that term insurance has been reinstated, the date of issue referred to in the Incontestability provision so far as any statements made in any reinstatement application are concerned will be deemed to be the date of that application." (Doc. No. 30 at 19 (Section 6, "Policy Changes")). Presumably, these are the "contestability terms of the Policy" referenced by Mony.

In a Claim Determination letter dated May 4, 2010, Mony notified Henns that it would not pay benefits to her because it rescinded the Policy. (Doc. No. 30 ¶¶ 17-18.) Specifically, Mony wrote in pertinent part:

> As you know, before reinstating a policy, we require certain

information from the applicant, which is recorded on the reinstatement application. This information is exceedingly important as it enables us to determine the insurability of the applicant.

On November 17, 2008, our office received from Mr. Harvey a completed application to reinstate the above noted policy. On the application, in response to the medical questions, he acknowledged treatment rendered by Dermatology Group for a rash around his shoulder and back. However, he denied there were any other current or historical medical conditions, symptoms or treatments within the past five years.

Contrary to Mr. Harvey's representations on the application, we have learned that on a continuous basis, since November 8, 2005, he had received frequent treatment from Dr. Joseph Deluca for bi-polar, ADHD, mood swings, anxiety, and depression. Additionally, we have learned that on February 7, 2007, Mr. Harvey was admitted involuntarily to Lifestream Behavioral Center . . . . Later that year he was treated for chest pain on October 26, 2007, at Hunt Club Medical Care. He was placed under the care of cardiologist Dr. Woska. . . . He was on a regiment of medications and diagnosed with the following conditions not aforementioned: uncontrolled hypertension, renal insufficiency and obesity. . . .

\*     \*     \*

These facts would have been material to the underwriting of the risk. Had we been aware of this true information when we underwrote this application, we would not have reinstated the policy. Therefore, for all these reasons and any others that may exist, it is necessary for us to rescind the policy at this time, and decline payment of the claim. Accordingly, we have enclosed a check representing a refund of all premiums paid from July 24, 2008, plus 3% interest. . . .

(Doc. No. 30 at 53-55.)

In response to Mony's Claim Determination letter, Henns's attorney sent Mony written objections and requested, among other things, copies of the original Policy, all amendments thereto, and the Reinstatement Applications. (Doc. No. 26-1 at 13-14.) One month later, Mony wrote that it would not release the requested documents unless Henns provided "a certified copy of Letters Testamentary and a signed request for information from the executor or administrator." (Doc. No.

26-1 at 15-16.)  In correspondence dated October 12, 2010, Henns's attorney reiterated her demand for copies of the Policy, any amendments, the Reinstatement Applications and related correspondence, and noted the absence of legal authority for Mony's refusal to provide the requested information.[8]  (Doc. No. 26-1 at 17-18.)  Approximately two weeks later, Mony provided "a blank specimen copy" of the Policy with "corresponding policy-specific information."  (*Id.* at 19-43.) After additional inquiries from Henns's attorney, Mony finally disclosed in February of 2010, that it did not have a copy of the Policy.  (*Id.* at 50, 54.)

**B.    The Policy**

The parties have not provided a copy of the original Policy to the Court.  Instead, they both have submitted specimens of the Policy that Mony would have issued to Harvey in July of 2000. (Doc. No. 30 ¶8 (stating that the "specimen contains all of the terms and conditions of the Policy, except for the Policy Specifications at page 3 which, in the case of the specimen contains a 'John Doe' example"); Doc. No. 26-1 at 54-55.)  The specimens did not include a copy of Harvey's original application or a specimen thereof, nor did it include a copy of the Reinstatement Applications.  Because no party has objected to consideration of the specimen, the Court will cite to the specimen documents as the Policy and treat its terms (except as to Policy Specifications, such as the date, face value, and named insured) as controlling.

The Policy is a term to age 95 life insurance policy with a face value of $650,000.00, and a "Policy Date" and "Date of Issue" of July 24, 2000.  (Doc. No. 30 at 10.)  "The Policy is a contract" issued by Mony "in consideration of the applications and payment of premiums."  (Doc. No. 30 at

---

[8]  In fact, Mony had a statutory obligation to provide Henns with a copy of the Policy, the Application, and the Reinstatement Applications.  § 627.408(2), Fla. Stat. (2010).

21 (Section 11 "General Provisions").)  Specifically, Mony agreed to pay benefits to Harvey's named beneficiary (Henns) under the following conditions:

> If the Insured dies while this Policy is in force and while premiums are being paid, [Mony] will pay the Death Proceeds of this Policy to the Beneficiary.  Payment will be made subject to all the provisions of this Policy, when we receive due proof of death at our Operations Center.

(Doc. No. 30 at 17 (Section 3 "We Will Pay").)[9]  The Policy was "in force" as of the Policy Date and continuing "until the Expiry Date as long as premiums are paid when due or prior to the end of the grace period."[10]  (Doc. No. 30 at 17 (Section 2 "About This Policy").  "If any premium is not paid by the end of the grace period, the Policy will end at once.  The Policy will have no further value."  (*Id.*)  Premiums were due under the Policy at intervals of 12 months computed from the Policy Date of July 24, 2000.  (Doc. No. 30 at 17-18 (Section 4 "Premiums and Policy Exchange"); Doc. No. 26-1 at 22.)  If the insured missed a premium payment, the Policy provided a right to reinstatement as follows:

> If any premium is not paid by the end of the grace period you may reinstate the Policy within 5 years of the due date of the first premium in default. . . .  We will need:
>
> (a)     evidence satisfactory to us of the Insured's insurability; plus
>
> (b)     payment of all overdue premiums plus compound interest at 6% a year.

---

[9]     Mony's "promise to pay" in the Policy is consistent with Florida Statutes, Section 627.461; however, the Policy terms are somewhat more favorable to the beneficiary in that it requires "proof of death," but does not require "surrender of the policy."  *See* § 627.461, Fla. Stat. (2010) ("[W]hen a policy becomes a claim by death of the insured, settlement shall be made upon receipt of due proof of death and surrender of the policy.").

[10]     Consistent with Florida Statutes, Section 627.453, the Policy provided a "grace period" of 31 days running from the premium due date during which Mony allowed the insured "to pay any amount needed to keep this Policy in force."  (Doc. No. 30 at 19 (Section 5 "Grace Period").)

(Doc. No. 30 at 20-21 (Section 9 "Reinstatement").)

The Policy also includes provisions concerning applications and policy reinstatement that are consistent with – although somewhat different from – provisions mandated by Florida Statutes, Sections 627.408, 627.454, 627.455, and 627.472.[11] *See supra*, Part II. A. Specifically, with respect to Harvey's applications, the Policy provides as follows:

> The application, a copy of which is attached, and any supplemental applications are a part of the Policy. Any such supplemental application will be attached to the Policy. The Policy, and attached riders and/or endorsements, the application and any supplemental applications make up the entire contract.
>
> \*     \*     \*
>
> All statements made in the application will be considered representations and not warranties. No statement may be used to make this Policy invalid or to deny a claim under it, unless the statement is contained in the written application, a copy of which must have been attached to the Policy at issue or delivery.

(Doc. No. 30 at 20-21 (Section 11, "General Provisions") (emphasis added).) These provisions of the Policy are more favorable than Section 627.408(1), in that Mony is prohibited from using any statement of Harvey to invalidate or deny a claim, "unless that statement is contained in the written application, a copy of which has been attached to the Policy *at issue or delivery*." (*Id.* (emphasis added).) Section 627.408, is more limited in that it prohibits an insurer's use of an insured's statements in an "application" if an insurer fails to attach such application to the "policy or contract *when issued*." § 627.461, Fla. Stat. (2010) (emphasis added). Further, in contrast to Florida Statutes, Sections 627.408 and 627.454, the Policy references "supplemental" applications in addition to "the

---

[11] Again, to the extent the Policy provisions differ from Florida's statutory provisions, the Policy provisions control if they are more favorable to Harvey and Henns. § 627.452(1) Fla. Stat. (2010); *Green*, 704 So. 2d at 1390.

application," and requires that both the application *and* "any supplemental application" be attached to the Policy. (Doc. No. 30 at 20-21.)

## C.     Resolution of the Parties' Arguments

Mony has the burden of establishing its Counterclaim and affirmative defenses, and there is no dispute that Mony will be unable to do so unless it can rely upon statements Harvey made in the Reinstatement Applications. Henns's position is that Mony is barred from relying upon such statements because Mony did not attach copies of the Reinstatement Applications to the Policy and issue or deliver the reinstated Policy with the attached Reinstatement Applications to Harvey. (Doc. No. 26 at 8-11; Doc. No. 36). Mony does not dispute that it failed to attach copies of the Reinstatement Applications to the Policy; nonetheless, Mony contends that Henns's argument is "without merit" because "there is no requirement–whether statutory, under the common law or in the Policy–to attach the Reinstatement Applications to the Policy." (Doc. No. 30 at 2, 5.)

Given the absence of disputed facts concerning whether the Reinstatement Application was attached to the Policy, the issue presented is well-suited to resolution by summary judgment. This is particularly true in this case because factual disputes are not created by the existence of an ambiguity in an insurance policy; rather, ambiguities are resolved in favor of the insured or beneficiary as a matter of law. *See Winer v. N.Y. Life Ins. Co.*, 190 So. 894, 900 (Fla. 1938) ("It has long been the trend of the decisions of this court to give to beneficiaries the benefit of doubt or ambiguity that may arise in the construction of the provision of insurance policies.").

Upon review of the entire Policy – including the terms of the Reinstatement Applications – the Court finds that an ambiguity exists concerning whether, after Reinstatement, Mony was required to issue or deliver to Harvey a copy of the Policy *with* the Reinstatement Applications

attached. This ambiguity exists due in part to the terms of the Reinstatement Application that reference "issuance" of a Policy if the Reinstatement Application is accepted. (*See supra* Part III. A. at 14-15 (quoting Doc. No. 30 at 34-35).) Such language indicates that Mony would *issue* a Policy, not merely continue the Policy previously in place.[12] (*Id.*) Further, the Policy itself explicitly states that any *supplemental* applications must be attached to the Policy. (*Supra* Part III. B. at 21 (quoting Doc. No. 30 at 20-21).) The Reinstatement Applications are "supplemental" applications under a fair reading of that term.[13] *See* BLACK'S LAW DICTIONARY 1577 (9th ed. 2009) (defining "supplemental" as "[s]upplying something additional; adding what is lacking"); WEBSTER'S NEW WORLD DICTIONARY 480 (1994)(defining "supplement" as "[s]omething added, esp. to make up for a lack"). Accordingly, resolving ambiguities against Mony, the Court finds that Mony was required to attach the Reinstatement Application to the Policy upon reinstatement or issuance of the Policy in December of 2009.

The Court further agrees with Henns that "a reasonable application of § 627.427 to the Policy language results in a requirement on [Mony] to attach" the Reinstatement Application "to the reinstated policy before it can use the statements in the application to contest a claim." (Doc. No. 36 at 5-6.) This is so because, Florida Statutes, Section 627.472, permits insurers to contest a reinstated life insurance contract "only . . . with the same conditions and exceptions as the policy

---

[12] For this reason, the Court is not persuaded by Mony's argument that it need not attach the Reinstatement Applications to the Policy because "the reinstated policy is not a new contract." (Doc. No. 29 at 5-7.) Notably, none of the cases cited by Mony in support of this argument involved an insurer who represented to its insured that a Policy would "issue" if the application were approved.

[13] For this reason as well, the Court rejects Mony's argument that the Policy terms impose "no requirement that a reinstatement application be attached to the Policy." (Doc. No. 29, at 7-8.) Again, the cases relied upon by Mony are distinguishable as none involved a policy that explicitly required attachment of any application after the original application.

provides with respect to contestability after original issuance." (Doc. No. 26 at 9; Doc. No. 36 at 4-6.) After "original issuance" the Policy in July of 2000, Mony could not contest coverage and deny claims based on statements "contained in the written application," unless a copy of such application was "attached to the Policy at issue or delivery." (*Id.* at 9-10 (emphasis added).) The same condition applied after reinstatement of the Policy in December of 2009 – Mony could not contest coverage and deny claims based on statements "contained in the written application," unless a copy of such application was "attached to the Policy at issue or delivery." Because Mony did not attach the Reinstatement Applications to the Policy upon issuance or delivery in December of 2009, Mony cannot now rely upon Harvey's statements in the Reinstatement Applications to establish its affirmative defenses or rescission Counterclaim. *See Prudential Ins.*, 176 So. at 880; *see also Eddins v. Nat'l Life & Accident Ins. Co.*, 138 So. 430, 430-31 (La. 1931); *Metropolitan Life Ins. Co. v. Burch*, 39 App. D.C. 397, 405 (D.C. 1912).

Because Mony cannot establish its affirmative defenses or Counterclaim without reference to the Reinstatement Applications, Henns is entitled to entry of summary judgment as to Mony's Counterclaim. Further, there is no factual dispute that the conditions triggering Mony's duty to pay benefits to Henns under the Policy have occurred, yet Mony has not paid Henns the benefits owed. Accordingly, Mony is liable to Henns on her claim of breach of contract.

### IV. Conclusion

Accordingly, it is hereby **ORDERED** and **ADJUDGED** as follows:

1.    The Motion for Summary Judgment by Plaintiff Theresa Henns (Doc. No. 26, filed June 4, 2011) is **GRANTED.**

2.    All pending motions are **DENIED AS MOOT.**

3.      Within ten days of the date of this Order, the parties shall advise the Court if a trial

on damages or any other matter is necessary.

**DONE** and **ORDERED** in Chambers in Jacksonville, Florida on December 1, 2011.

ROY B. DALTON JR.
United States District Judge

Copies furnished to:

Counsel of record